UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| R. DAVID BOYER, TRUSTEE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CAUSE NO. 1:05-CV-129 |
| ) | |
| CHRISTOPHER GILDEA, et al., ) | |
| ) | |
| Defendants. ) | |

# OPINION AND ORDER

## I. INTRODUCTION

This matter is before the Court on Defendant Arlington Capital, LLC's motion to compel Plaintiff R. David Boyer, Trustee ("Trustee"), to produce five e-mail communications that he has withheld under the claim of work product doctrine or common interest doctrine. (Docket # 184.) The withheld e-mails are responsive to a request for production served by Arlington Capital on the Trustee on May 22, 2008. (*See* Docket # 148.)

The Trustee filed a response to Arlington Capital's motion on January 13, 2009 (Docket # 189), and Arlington Capital replied on January 23, 2009 (Docket # 194). In addition to considering the parties' respective arguments, the Court conducted an *in camera* inspection of the e-mails. (*See* Docket # 192, 193.)

For the following reasons, Arlington Capital's motion to compel will be DENIED.

## II. FACTUAL AND PROCEDURAL BACKGROUND

The Trustee has described this as a "bid-rigging" case orchestrated by all ten Defendants for the sale of the business assets of a bankrupt entity, GT Automation, Inc., in April 2003.

In particular, on October 18, 2004, the Trustee filed an amended adversary proceeding complaint against a number of Defendants, including Arlington Capital. (Docket # 12). In the complaint, the Trustee alleged among other things that Arlington Capital and the other Defendants violated 11 U.S.C. § 363(n) by entering into an agreement to control the price of the auction assets to the detriment of both secured (*i.e.*, primarily Comerica Bank) and unsecured creditors.

Baker & Daniels, LLP, was initially employed as special counsel to the Trustee in the Bankruptcy Court case. Baker & Daniels, specifically Attorneys John Burns and Mark Werling, were counsel for Comerica Bank, the largest secured creditor of GT Automation during the Chapter 11 phase of the bankruptcy proceedings, and still are counsel for Comerica. After the Trustee filed its amended complaint, the Bankruptcy Court granted Baker & Daniels's application to withdraw as special counsel to the Trustee. Attorney John McCarthy of Bainton McCarthy was and remains special counsel to the Trustee. On June 12, 2006, after Baker & Daniels had withdrawn as special counsel to the Trustee, Werling filed a lengthy affidavit with the Court (Docket # 82), detailing his knowledge of the factual events relevant in this dispute.

On May 22, 2008, Arlington Capital served counsel for the Trustee with a request for production of documents, and on July 9, 2008, the Trustee served his objections and responses. Arlington Capital then filed a motion to compel certain responses from the Trustee (Docket # 148), which the Court granted on November 13, 2008 (Docket # 176), ordering the Trustee to

produce certain documents together with a privilege log for any documents he claims are privileged.

On December 23, 2008, after receiving the Trustee's privilege log, Arlington Capital filed the instant motion to compel, challenging the Trustee's withholding of five e-mail communications under the work product doctrine or common interest doctrine. Four of the e-mails are between Werling and one or more attorneys with Bainton McCarthy, the Trustee's special litigation counsel. The remaining e-mail is between a Bainton McCarthy attorney and James Treadwell, an officer of one of GT Automation's largest unsecured creditors and an anticipated fact witness in this case.

### III. LEGAL STANDARD

The work product doctrine is a qualified privilege and is "distinct from and broader than the attorney-client privilege." *Caremark, Inc. v. Affiliated Computer Servs., Inc.*, 195 F.R.D. 610, 613 (N.D. Ill. 2000) (citing *United States v. Nobles*, 422 U.S. 225, 238 (1975)). The work product doctrine, stemming from *Hickman v. Taylor*, 329 U.S. 495 (1947), is codified in Federal Rule of Civil Procedure 26(b)(3) as follows:

> Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative . . . . But, subject to Rule 26(b)(4), those materials may be discovered if: (i) they are otherwise discoverable under Rule 26(b)(1); and (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means. . . . If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.

Therefore, in order to come within the qualified protection from discovery created by Rule 26(b)(3), a party claiming protection must show that the materials sought are: (1) documents and

3

tangible things; (2) prepared in anticipation of litigation or for trial; and (3) by or for a party or by or for a party's representative. *Caremark,* 195 F.R.D. at 613-14 (citing 8 Wright, Miller & Marcus, *Federal Practice And Procedure*: Civil 2D § 2024 (1994)).

Materials prepared in anticipation of litigation by or for a party, by any representative of that party, are protected, regardless of whether the representative is acting for the lawyer. *Id.* at 615. "Thus, whether a document is protected depends on the motivation behind its preparation, rather than on the person who prepares it." *Id*.

Nonetheless, as articulated in Rule 26(b)(3), once the qualified work product privilege is established, it can still be overcome if the party seeking the materials shows: (1) a substantial need for the materials, and (2) an inability to obtain the substantial equivalent of the information without undue hardship. *Id.* at 614. Even upon such a showing, however, "the lawyer's mental processes are required to be protected from disclosure." *Id.*

To elaborate, Rule 26(b)(3) divides work product into two categories: (1) "opinion" work product, which reflects or reveals a lawyer's mental processes; and (2) "ordinary" or "fact" work product. *Mattenson v. Baxter Healthcare Corp.*, 438 F.3d 763, 768-69 (7th Cir. 2006); *Caremark*, 195 F.R.D. at 616. "Both are generally protected and can be discovered only in limited circumstances." *Caremark*, 195 F.R.D. at 616 (citing *In re Grand Jury Proceedings*, 33 F.3d 342, 348 (4th Cir. 1994)). Opinion work product, however, is even more scrupulously protected than ordinary or fact work product, since it "represents the actual thoughts and impressions of the attorney."[1] *Grand Jury Proceedings*, 33 F.3d at 348; *see also Mattenson,* 438

---

[1] The Supreme Court has declined to rule whether this immunity is absolute, and, if not, the showing required to overcome a presumption of protection. *Upjohn Co. v. United States*, 449 U.S. 383, 401 (1981). The Seventh Circuit Court of Appeals has stated that an attorney's mental impressions and opinions are afforded "heightened protection," *Logan v. Commercial Union Ins. Co.*, 96 F.3d 971, 976 n.4 (7th Cir. 1996), and referred to

4

F.3d at 768-69; *Caremark*, 195 F.R.D. at 616.

## IV. DISCUSSION

### A. *E-Mail Dated December 22, 2005, From Werling to Bainton and Cohen, and E-Mail Dated December 23, 2005, From Werling to Cohen*

The first two documents in dispute are e-mails sent by Werling to one or more attorneys at Bainton McCarthy, the Trustee's current counsel: the first to J. Joseph Bainton and Michael Cohen (and copied to John Burns of Baker & Daniels), and the second to solely Cohen. The first e-mail articulates Werling's analysis of the computation of certain buyout premiums and the second discusses his analysis of certain term sheets.[2]

Arlington Capital, citing *Ricoh Co. v. Aeroflex Inc.*, 219 F.R.D. 66, 69-70 (S.D.N.Y. 2003), argues that these two e-mails do not constitute work product because they were prepared by Werling, who is a fact witness in this case and not a party. In *Ricoh*, the Court concluded that e-mails between the defendants' counsel and the employees of a non-party did not constitute work product, stating that "it is a stretch to apply the attorney work product privilege to documents created by a third party and sent to counsel for a party." *Id*. The *Ricoh* Court further reasoned that there was no "confidential relationship between the sender . . . and the recipient (lawyers for the [d]efendants . . .), as would be the case where the 'third party' is a consultant retained by a party or its lawyers and brought within the privilege as an agent of the attorney or

---

such material as being "out of bounds," *Mattenson*, 438 F.3d at 768-69. At least one district court has held that "mental impressions, conclusions, opinions, or legal theories" of an attorney are "absolutely privileged." *Vardon Golf Co. v. BBMG Golf Ltd.,* 156 F.R.D. 641, 646 (N.D. Ill. 1994). Thus, in essence, the immunity from discovery for opinion work product is absolute or nearly absolute. *See Bio-Rad Labs., Inc. v. Pharmacia, Inc*., 130 F.R.D. 116, 121 (N.D. Cal. 1990). In fact, in those circuits that do allow discovery for these type of documents, a "compelling showing" is required to produce the documents. *Id*.

[2] The second e-mail is the only document that the Trustee claims is also protected under the common interest doctrine. Because the material is ultimately protected as work product, the Court does not need to reach the common interest doctrine.

party." *Id*.

However, as the Trustee argues, it is significant that Werling served as the Trustee's prior counsel in this litigation and that this communication was directed to the Trustee's current counsel. An *in camera* inspection of the two e-mails reveals that they contain Werling's mental impressions, conclusions, opinions, or legal theories about this case, materials which the Seventh Circuit Court of Appeals has emphasized are afforded "heightened protection."[3] *Logan*, 96 F.3d at 976 n.4. If these documents were to be disclosed, it could provide Arlington Capital with insight into the Trustee's current legal strategy in this case.

"The work product doctrine reflects the strong public policy against invading the privacy of an attorney's course or preparation." *Jackson v. City of Chicago*, No. 03 C 8289, 2006 WL 2224052, at *4 (N.D. Ill. July 31, 2006) (citation omitted). In that regard, the Seventh Circuit has specifically explained that the work product doctrine shields materials "on the theory that the opponent shouldn't be allowed to take a free ride on the other party's research, or get the inside dope on that party's strategy . . . ." *Mattenson*, 438 F.3d at 767-68; *see also Hobley v. Burge*, 433 F.3d 946, 949 (7th Cir. 2006) (stating that the purpose of the doctrine is "to establish a zone of privacy in which lawyers can analyze and prepare their client's case free from scrutiny or interference by an adversary"); *1100 West, LLC v. Red Spot Paint & Varnish Co.*, No. 1:05-cv-1670-LJM-WTL, 2007 WL 2904073, at *2 (S.D. Ind. May 18, 2007) (stating that one of the purposes of the doctrine is to prevent a party "from taking a free ride on the research and thinking of his opponent's lawyer" (quoting *Hobley*, 433 F.3d at 949)).

---

[3] In fact, in its reply brief (Docket # 159) to its initial motion to compel, Arlington Capital definitively stated that it "is not seeking communications that reflect the legal analysis of Mr. Werling." (Arlington Capital's Reply to Trustee's Mem. of Law in Opp'n of Arlington Capital's Mot. to Compel Produc. 6.)

In short, because these two communications contain the Trustee's former counsel's mental impressions about this litigation and were directed to the Trustee's current counsel, their disclosure could reveal the Trustee's legal strategy in this action; therefore, they are entitled to protection under the work product doctrine. Arlington Capital's motion to compel these documents will be DENIED.

### B. *E-Mail Chains Between Werling and Cohen Dated June 5, 2006, and June 9, 2006*

The next two disputed e-mail chains are also between Werling and Cohen and pertain to, at least in part, Werling's draft affidavit. The first was initiated by Werling and discusses certain factual issues about his draft affidavit, his analysis of certain background facts, and Arlington Capital's request for sanctions. The second e-mail chain was initiated by Cohen (and copied to his paralegal) to discuss Werling's draft affidavit and certain issues concerning the asset purchase agreement.

As explained *supra*, Arlington Capital argues that these two e-mails do not constitute work product because Werling is a non-party, fact witness in this case. However, the Court's *in camera* inspection of these two e-mails reveals that they again contain, in part, Werling's mental impressions, conclusions, opinions, or legal theories about the instant litigation. As stated *supra*, the Seventh Circuit has referred to this type of material as "out of bounds." *Mattenson*, 438 F.3d at 768-69. Placing the mental impressions and legal theories of the Trustee's former counsel into the hands of Arlington Capital could provide it with insight into the Trustee's legal strategy in this case, thereby violating the public policy interests of the work product doctrine. *See generally In re ANR Advance Transp. Co.*, 302 B.R. 607, 616 (E.D. Wis. 2003) ("[I]t is widely agreed that the principal justification for the doctrine is that protection of work product is necessary to

7

preserve the adversary system of justice.") (collecting cases).

As to the portions of the e-mails that specifically discuss the evolution of Werling's affidavit, many district courts "consider draft affidavits and communications with counsel relating to affidavits as covered by the attorney work product doctrine." *Randleman v. Fid. Nat'l Title Ins. Co.*, 251 F.R.D. 281, 285 (N.D. Ohio 2008); *see, e.g.*, *Tuttle v. Tyco Elecs. Installation Servs., Inc.*, No. 2:06-cv-581, 2007 WL 4561530, at *2 (S.D. Ohio Dec. 21, 2007); *Kyoei Fire & Marine Ins. Co. v. M/V Mar. Antalya*, 248 F.R.D. 126, 155 (S.D.N.Y. 2007); *United States v. Univ. Hosp., Inc.*, No. 1:05-cv-445, 2007 WL 1665748, at *1 (S.D. Ohio 2007); *1100 West,* 2007 WL 2904073, at *2; *Ideal Elec. Co. v. Flowserve Corp.*, 230 F.R.D. 603, 608-09 (D. Nev. 2005). Admittedly, there is contrary authority, reasoning that affidavits are not "attorney thought" but are instead primarily "factual in nature and content." *Milwaukee Concrete Studios, Ltd. v. Greeley Ornamental Concrete Prods., Inc.*, 140 F.R.D. 373, 378-79 (E.D. Wis. 1991); *see, e.g., Murphy v. Kmart Corp.*, No. 07-5080-KES, 2009 WL 89687, at *6-9 (D.S.D. Jan 9, 2009); *Walker v. George Koch Sons, Inc.*, No.. 2:07cv274 KS-MTP, 2008 WL 4371372, at *5 (S.D. Miss. Sep. 18, 2008); *Infosystems Inc. v. Ceridian Corp.*, 197 F.R.D. 303, 306-07 (E.D. Mich. 2000).

But here Arlington Capital fails to show that it has a substantial need for this information and that is unable without undue hardship to obtain the substantial equivalent of the materials by other means. *See* Fed. R. Civ. P. 26(b)(3); *Mattenson*, 438 F.3d at 768-69. In fact, Arlington Capital does not even raise a substantial need argument until its reply brief and then does so rather conclusorily, simply asserting that the e-mails "could contradict statements [Werling] made in his affidavit or during his deposition." (Reply Br. 4.)

8

Of course, "[a]rguments that first appear in a reply brief generally are deemed waived."[4] *Merrick v. Wal-Mart Supercenter*, No. 3:06-CV-292 RM, 2007 WL 1742194, at *2 (N.D. Ind. June 13, 2007); *see, e.g.*, *Porco v. Trustees of Ind. Univ.*, 453 F.3d 390, 395 (7th Cir. 2006). And, Arlington Capital makes no allegation that Werling exhibited any inconsistencies or gaps in his memory during his deposition that would give rise to a substantial need for the e-mails. *Cf. Johnson v. Bryco Arms*, No. 03 CV 2582, 02 CV 3029, 2005 WL 469612, at *5 (E.D.N.Y. 2005) (finding substantial need to disclose work product for impeachment purposes where the witness demonstrated inconsistencies and gaps in his memory during his deposition). Furthermore, Arlington Capital *never even argues* that it cannot obtain the substantial equivalent of these documents by other means.

As a result, these two e-mail chains will be protected under the work product doctrine, and Arlington Capital's motion to compel their disclosure will be DENIED.

### C. E-Mail Chain Dated June 8, 2006, Between Treadwell and Cohen

The final document in dispute is the e-mail chain between non-party, fact witness Treadwell and Cohen, discussing Treadwell's draft affidavit and his recollection of a meeting with Arlington Capital. Treadwell's affidavit was filed with the Court four days after this e-mail correspondence took place. (*See* Docket # 79.)

The Court's *in camera* inspection of the e-mail reveals that Cohen initiated this e-mail chain to Treadwell to discuss Treadwell's affidavit that Cohen was preparing. The communication on its face seemingly articulates only factual details, giving very little glimpse, if

---

[4] Arlington Capital also raises for the first time in its reply brief a vague waiver argument that is rather difficult to make sense of and merits no further mention. (Reply Br. 5-6.)

9

any, into Cohen's legal reasoning. Arlington Capital, however, never asserts that it has a substantial need for this document or that it is unable without undue hardship to obtain its substantial equivalent by other means. *See* Fed. R. Civ. P. 26(b)(3); *Mattenson*, 438 F.3d at 768-69.

Consequently, we again will align with the cases that find communications with counsel relating to affidavits as covered by the attorney work product doctrine. *See Randleman*, 251 F.R.D. at 285; *Tuttle*, 2007 WL 4561530, at *2; *Kyoei Fire*, 248 F.R.D. at 155; *Univ. Hosp.*, 2007 WL 1665748, at *1; *1100 West*, 2007 WL 2904073, at *2; *Ideal Elec.*, 230 F.R.D. at 608-09. Therefore, Arlington Capital's motion to compel with respect to this document will also be DENIED.

## V.  CONCLUSION

For the reasons set forth herein, Defendant Arlington Capital's motion to compel to produce documents withheld under the claim of work product doctrine or common interest doctrine (Docket # 184) is DENIED.

SO ORDERED.

Enter for January 29, 2009.

S/Roger B. Cosbey
Roger B. Cosbey,
United States Magistrate Judge