**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

R. DAVID BOYER, TRUSTEE        )
                               )
        Plaintiff,             )
                               )
    v.                         )        CAUSE NO.: 1:05-CV-129-TLS
                               )
CHRISTOPHER GILDEA et. al,     )
                               )
        Defendants.            )

**OPINION AND ORDER**

Presently before the Court are motions for summary judgment and motions to strike by the Defendants as to all counts of the Second Amended Complaint [ECF No. 183]. This Opinion and Order addresses all motions relating to Counts I and II of the Second Amended Complaint.

On December 8, 2008, this Court entered an Opinion and Order [ECF No. 181] allowing the Plaintiff to amend his complaint by filing a Second Amended Complaint incorporating evidence gathered through discovery and a new claim for attorney's fees. On April 17, 2009, Defendants Gasson, LLC and Christopher Gildea filed a Motion for Summary Judgment as it Relates to Count I of Plaintiff's Second Amended Complaint [ECF No. 202], along with a Brief in Support [ECF No. 203] and an Appendix of Designated Documents [ECF No. 204]. Also on April 17, Defendant Christopher Gildea filed a Motion for Partial Summary Judgment as it Relates to Count II of Plaintiff's Second Amended Complaint [ECF No. 205], along with a Brief in Support [ECF No. 206] and an Appendix of Designated Documents [ECF No. 207]. On May 18, the Plaintiff responded with a Memorandum of Law in Opposition [ECF No. 219] which addressed both Count I and Count II, along with an Appendix of Designated Documents [ECF No. 220] and a Declaration of Mark A. Werling [ECF No. 221]. On June 2, Defendants Gasson, LLC and Christopher Gildea filed a Reply [ECF No. 230] with respect to the Count I motion, and Defendant Christopher Gildea filed a Reply [ECF No. 233] with respect to the Count II

motion. Also on June 2, Defendants Gasson, LLC and Christopher Gildea filed a Motion to Strike Portions of Plaintiff's Statement of Genuine Issues in Opposition to Defendants' Motion for Summary Judgment as it Relates to Count I [ECF No. 228], along with a Brief in Support [ECF No. 229], and Defendant Christopher Gildea filed a Motion to Strike Portions of Plaintiff's Memorandum of Law in Opposition to Gildea's Motion for Summary Judgment as it Relates to Count II [231], along with a Brief in Support [ECF No. 232]. On June 17, the Plaintiff filed a Memorandum of Law in Opposition to Defendants' Motions to Strike [ECF No. 237] relating to Counts I and II, along with a Declaration of John G. McCarthy in Support [ECF No. 238]. On June 24, Defendants Gasson, LLC and Christopher Gildea filed a Reply Brief [ECF No. 241] relating to the Count I Motion to Strike, and Defendant Christopher Gildea filed a Reply Brief [ECF No. 242] relating to the Count II Motion to Strike. For the following reasons, the Court will deny the Defendants' Motions for Summary Judgment with respect to Counts I and II of the Second Amended Complaint.

## BACKGROUND

The Court has previously outlined the history of this case in its October 5, 2006, Opinion [ECF No. 112], its August 24, 2007, Opinion [ECF No. 124], its November 5, 2007, Order and Opinion [ECF No. 137], and its December 8, 2008, Opinion and Order [ECF No. 181]. In the interest of completeness, the Court will here summarize and update the case history.

This case arose out of the bankruptcy of GT Automation Inc. (the Debtor). Steven Gildea was the president of the Debtor and sole equity owner. Defendant Anita Gildea is Steven Gildea's wife. Steven and Anita Gildea were the only directors of the Debtor. Defendant Christopher Gildea, Steven Gildea's son, was an officer of the Debtor. Christopher Gildea also owned Defendant Gasson, LLC, which leased equipment to the Debtor. Defendant Katherine Gildea is Christopher Gildea's spouse.

2

The Debtor filed for bankruptcy on October 9, 2001, and the bankruptcy court allowed the Debtor to continue operating as a debtor-in-possession. Comerica was the Debtor's largest secured creditor and held a first priority security interest and lien on all of its assets. Comerica filed a proof of claim in the bankruptcy proceedings for $7,818,406.10.

During the bankruptcy, Defendant Christopher Gildea and other Gildea family members and officers of the Debtor (the Gildea Group) made efforts to secure financing to purchase the Debtor's assets. There were negotiations between the Gildea Group and Comerica, but at some point the Gildea Group stopped negotiating with Comerica. The Gildea Group also negotiated with Defendant Arlington Capital. As part of the Gildea Group's efforts to secure financing, financial documents from the Debtor were submitted to First Federal Bank of Huntington and to Community Development Corporation of Northeast Indiana. In February 2003, the Debtor moved for an order authorizing an auction of the Debtor's assets. The Gildea Group sought to purchase the Debtor's assets. The bankruptcy court issued an order allowing an auction of the Debtor's assets pursuant to 11 U.S.C. § 363, subject to conditions agreed to by the Debtor and its creditors.

The auction for the Debtor's assets was held on April 3, 2003. Defendant GTA Acquisition, LLC submitted a bid of $2,725,000, which was the highest bid. The only other bid was a credit bid submitted by Comerica. Defendant GTA Acquisition was an entity created by Defendant Arlington Capital on or about April 1 for the purpose of acquiring the Debtor's assets. Defendant Arlington also formed GTA Realty, LLC for the purpose of taking title to the Debtor's real estate. After holding a hearing on April 7, the bankruptcy court, on April 8, approved the sale of the Debtor's assets to Defendant GTA Acquisition. On April 16, 2003, an amended sale order was issued. There were no objections to the sale.

On April 7, 2003, Defendant GTA Acquisition was acquired by Defendant GT Enterprises, LLC (Defendant GT/E). Defendant GT/E was formed and is owned by Defendants

3

Katherine Gildea, Mike Motter, and Matt Mercer. Defendant Matt Mercer was a Vice President of the Debtor. Defendant Mike Motter was the Debtor's accountant.

This case was filed on April 7, 2004. The Plaintiff's Complaint stated claims against Defendants Christopher Gildea, Katherine Gildea, Michael Motter, Matt Mercer, Anita Gildea, Arlington Capital, LLC, GT Acquisition, LLC, GT/E, LLC, Gasson, LLC, and Gildea & Gorman, LLC. An amended complaint was filed on October 18, 2004. The Amended Complaint listed eight counts.

In its Opinion of October 17, 2005, the Court granted summary judgment to Defendant Arlington Capital on the Plaintiff's state law claims against it (Counts VI to VIII of the Amended Complaint), finding the bankruptcy court's April 16, 2003, Amended Sale Order precluded such claims. (Opinion, ECF No. 49.) The Court stated that the state law claims could be brought only if the Amended Sale Order was set aside. In response, the Plaintiff brought a separate case alleging fraud on the court and seeking to alter the Amended Sale Order. *Boyer v. GT Acquisition*, 1:06-CV-90, (N.D. Ind. filed March 22, 2006). The bankruptcy court declined to provide the relief sought by the Plaintiff, stating that granting the requested relief probably would not remove the preclusive effect of the Amended Sale Order, and holding that a judgment that is alleged to have been obtained by fraud on the court cannot be amended, it must be vacated. The Plaintiff appealed, and this Court agreed with the bankruptcy court as stated in its Opinion and Order of August 9, 2007. (1:06-CV-90, ECF No. 18.)

In its Opinion of October 5, 2006, the Court denied summary judgment on Count I of the Amended Complaint, granted summary judgment on Counts III, IV, and V of the Amended Complaint, and withheld ruling on Count II of the Amended Complaint pending further briefing. (Opinion, ECF No. 112.) Counts I and II sought to set aside transfers of Debtor funds to Defendant Christopher Gildea, and Count III was to set aside a transfer of Debtor funds to Gildea & Gorman, LLC. Count IV was a state law claim alleging that Defendants Mike Motter

4

and Christopher Gildea breached their fiduciary duties to the Debtor. Count V alleged that Defendants Arlington Capital, GT/E, Christopher Gildea, Katherine Gildea, Mike Motter, and Matt Mercer colluded to control the price of the Debtor's assets at the auction sale.

In its Opinion of August 24, 2007, the Court denied summary judgment on Count II of the Amended Complaint. (Opinion, ECF No. 124.) The Court additionally granted the Plaintiff's Motion to Alter its previous decision with respect to Count V of the Amended Complaint, vacating its previous Order granting summary judgment on Count V.

In its Order and Opinion of November 5, 2007, the Court certified its previous Opinion of August 24, 2007, for interlocutory appeal (Order & Opinion, ECF No. 137), but the United States Court of Appeals for the Seventh Circuit denied the petition for interlocutory appeal. (ECF No. 144.)

Finally, in its Opinion and Order of December 8, 2008, the Court granted the Plaintiff's request to file a Second Amended Complaint. (Opinion and Order, ECF No. 181.) The Second Amended Complaint includes four counts, the first three of which are functionally equivalent to Counts I, II and V of the Amended Complaint, with some additional factual allegations. Count I seeks to avoid the transfer of $170,000 from the Debtor to Defendant Christopher Gildea which the Plaintiff claims was setoff without approval of the bankruptcy court. Count II seeks to avoid more than $30,000 of the Debtor's payments to Defendant Christopher Gildea which the Plaintiff claims were not in the ordinary course of business. Count III alleges that Defendants Arlington Capital, GT/E, Christopher Gildea, Katherine Gildea, Mike Motter and Matt Mercer colluded to control the price of the Debtor's assets at the auction sale.  Finally, Count IV is a request for attorney's fees.

This Opinion and Order addresses all motions relating to Counts I and II of the Second Amended Complaint.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the facts supported by materials in the record show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56. The motion should be granted so long as no rational fact finder could return a verdict in favor of the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson,* 477 U.S. at 249–50; *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994). The party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also* N.D. Ind. L.R. 56.1(a) (stating that the movant must provide a "Statement of Material Facts" that identifies the facts that the moving party contends are not genuinely disputed). In response, the nonmoving party cannot rest on bare pleadings alone but must use the evidentiary tools listed in Rule 56 to designate specific material facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324; *Insolia v. Philip Morris Inc*., 216 F.3d 596, 598 (7th Cir. 2000); N.D. Ind. L.R. 56.1(b) (directing that a  response in opposition to a motion for summary judgment must include "a section labeled 'Statement of Genuine Disputes' that identifies the material facts that the party contends are genuinely disputed so as to make a trial necessary"). According to Rule 56:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

6

Fed. R. Civ. P. 56(c)(1).

Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, the court must construe all facts in a light most favorable to the nonmoving party, view all reasonable inferences in that party's favor, *see Bellaver v. Quanex Corp.*, 200 F.3d 485, 491–92 (7th Cir. 2000), and avoid "the temptation to decide which party's version of the facts is more likely true," *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) (noting the often stated proposition that "summary judgment cannot be used to resolve swearing contests between litigants"). A material fact must be outcome determinative under the governing law. *Insolia*, 216 F.3d at 598–99. "Irrelevant or unnecessary facts do not deter summary judgment, even when in dispute." *Harney v. Speedway SuperAmerica, LLC,* 526 F.3d 1099, 1104 (7th Cir. 2008).

Under Federal Rule of Civil Procedure 56(c)(4), any affidavit or declaration "used to support or oppose a motion [for summary judgment] must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." On a motion for summary judgment, a court must disregard parts of an affidavit that fail to comply with this rule. *Cooper-Schut v. Visteon Auto. Sys.*, 361 F.3d 421, 429 (7th Cir. 2004); *Friedel v. City of Madison*, 832 F.2d 965, 970 (7th Cir. 1987). The following statements do not comply with the rule and should be disregarded: "(1) conclusory allegations lacking supporting evidence; (2) legal argument; (3) self-serving statements without factual support in the record; (4) inferences or opinions not grounded in observation or other first-hand experience; and (5) mere speculation or conjecture." *Heltzel v. Dutchmen Mfg., Inc.*, No. 3:06-CV-227, 2007 WL 4556735, at *4 (N.D. Ind. Dec. 20, 2007) (quotation marks and citations omitted). Although "self-serving statements in affidavits without factual support in the record carry no weight," *Butts v. Aurora Health Care, Inc.*, 387 F.3d 921, 925 (7th Cir. 2004) (emphasis omitted), "a self-serving affidavit supported by facts in the record [can] defeat summary judgment," and the record "may include the self-serving affidavit itself,

7

provided that the affidavit meets the usual requirements for evidence on summary

judgment—including the requirements that it be based on personal knowledge and that it set forth

specific facts showing that there was a genuine issue for trial," *Buie v. Quad/Graphics, Inc.*, 366

F.3d 496, 504 (7th Cir. 2004) (quotation marks and citations omitted).


## ANALYSIS

### A.      Count I of the Second Amended Complaint

Pursuant to 11 U.S.C. § 549, Count I of the Second Amended Complaint seeks to avoid

the transfer of a $170,000 account receivable from the Debtor to Defendant Christopher Gildea.

Defendants Gasson, LLC and Christopher Gildea deny that any such transfer took place and

argue that the account receivable was sold in the auction as an asset of the Debtor. The

Defendants do not dispute the Plaintiff's assertion that if such a post-petition transfer prior to the

auction date is proven it would be unauthorized and recoverable under § 549. Therefore, the only

issue in this claim is whether the Debtor transferred the account receivable to Christopher

Gildea.


### 1.      *Facts Relevant to Count I*

At the time the Debtor filed for bankruptcy, the Debtor owned an account receivable for

payment of  $170,000 by Defendant Gasson, LLC. Gasson was a company owned by Defendant

Christopher Gildea. The Accounts Receivable Aged Invoice Report that was filed with the

bankruptcy court on December 31, 2001, lists the account receivable as outstanding as of

December 16, 2001. The Plaintiff averred in his Amended Complaint that the $170,000 account

receivable was setoff against back wages owed by the Debtor to Defendant Christopher Gildea,

along with monies owed by the Debtor to Defendant Gasson, LLC. Defendants Gasson, LLC and

Christopher Gildea deny that any setoff occurred.

This Court previously considered and denied summary judgment as to this issue because there was a triable issue of fact concerning whether the transfer occurred. The Court stated as follows:

> A reasonable jury could find from the Plaintiff's evidence that the Debtor transferred the account receivable to Chris Gildea as payment for back wages. While Gildea has some documents stating the Gasson receivable remained outstanding, other documents do not include the Gasson receivable. The December 5, 2001, filing and the Amended Plan Offer attachments both show that the Debtor intended to write off the Gasson receivable. The Amended Plan Offer attachment states it would be offset against Chris Gildea's outstanding wages. The Gasson receivable was not included in the bid to acquire the Debtor's assets, and was not included in the financial documents filed with the Huntington bank or the Community Development Corporation. Gildea never sought his back wages that were owed, suggesting the offset had taken place. Gildea has not carried his burden to submit evidence sufficient so that a reasonable jury could only find that no transfer occurred. Therefore, a material issue of fact exists on the question for a jury to answer.

*Boyer v. Gildea*, No. 1:05-CV-129-TLS, 2006 WL 2868924, at *5 (N.D. Ind. Oct. 5, 2006). Further, the Court stated that "[t]he burden is on Chris Gildea, not the Plaintiff, to prove the validity or existence of the transfer." *Id. See* Fed. R. Bankr. P. 6001 ("Any entity asserting the validity of a transfer under § 549 of the Code shall have the burden of proof.").

Defendants Gasson, LLC and Christopher Gildea again challenge the Plaintiff's assertion that the transfer occurred. They state that at all times up to the sale of the Debtor's assets the account receivable remained due and owing. In support of their assertion, they submit, *inter alia*, the affidavit of Defendant Christopher Gildea; the affidavit of Defendant Michael Motter; and the affidavit of Thomas Norris, who prepared the financial reports for the Debtor from the date bankruptcy was filed up through March 2003. The financial reports were given to the Debtor's primary lender, Comerica, as well as the bankruptcy trustee (the Plaintiff). Among these reports were listings of the Debtor's accounts receivable, and these listings always included the Gasson receivable. The Weekly Cash Collateral Report for the week ending March 7, 2003, lists the $170,000 Gasson account receivable as outstanding. (Norris Aff.¶ 7, ECF No. 204-5.) Norris

states that the financial books and records show no setoff of the account receivable owing by Gasson for unpaid wages to Christopher Gildea. (*Id.* ¶ 8.) Defendant Michael Motter's affidavit reiterates that numerous financial records, including an audit by the firm of Brady Ware dated March 31, 2003, list the Gasson receivable. (Motter Aff., ECF No. 204-5.) Further, Defendant Christopher Gildea avers that "according to the financial books and records of the Debtor," the Gasson receivable remained due and owing during the entire bankruptcy case. (Christopher Gildea Aff.¶ 5, ECF No. 204-5.) The Defendants submit deposition testimony by Mark Werling and John Burns to show that as late as March 2003 there were discussions about carving out the Gasson receivable from the assets to be sold at auction, though neither Werling nor Burns remember the specifics of these discussions. (Werling Dep., ECF No. 204-5; Burns Dep., ECF No. 204-5.) Finally, the Defendants submit the Asset Purchase Agreement from April 7, 2003, noting that the Gasson receivable is not listed as an excluded asset under paragraph 1.2 (Asset Purchase Agreement, ECF No. 204-4), and therefore, the Defendants argue, when the bankruptcy court approved the auction sale on April 8 and April 16, it must have approved the transfer of the Gasson receivable. The Defendants do not submit evidence to show that the Gasson receivable was ever paid.

The Plaintiff submits in substance the same evidence as he relied upon previously, evidence that the account receivable was transferred from the Debtor to Defendant Christopher Gildea to offset an amount the Debtor allegedly owed Defendant Christopher Gildea for unpaid wages. In the summer of 2002, during reorganization negotiations between a group associated with Steven Gildea and the Debtor's creditors, Defendant Mike Motter submitted an Amended Plan Offer, which would have allowed Steven Gildea and associated parties to retain control over the Debtor. The e-mail attached to the Amended Plan Offer is dated July 24, 2002. An attachment to the Amended Plan Offer addressed the Debtor's doubtful or uncollectible accounts, including the Gasson receivable. The attachment stated: "After discussing the matter

10

with Steve Gildea and Thomas Norris, it was agreed that the outstanding balance should be exchanged for a waiver of both wages due Chris Gildea and monies owed to Gasson LLC." (Werling Aff. ¶ 9, ECF No. 82;Werling Aff. Ex. A, at 6, ECF No. 82-2.) This was testified to by Mark Werling, an attorney who represented Comerica in the negotiations.

The Plaintiff also submits a property schedule that was filed with the bankruptcy court on December 5, 2001. The schedule lists the $170,000 Gasson, LLC account receivable, but states that the $170,000 would be adjusted in full. (Boyer Decl. ¶4(b), ECF No. 77; Boyer Decl. Ex. C, at GTAUTO 40, 57, ECF No. 77-4.) The Plaintiff next points to financial statements he argues Defendant Christopher Gildea provided to First Federal Bank of Huntington and to Community Development Corporation of Northeast Indiana when he was seeking financing to purchase the Debtor's assets. Documents submitted by Rozyln Rader, who worked for the Community Development Corporation, list the Debtor's accounts receivable as of November 20, 2002, and do not show the Gasson receivable as outstanding. (Rader Aff. Ex. B, ECF No. 81-3.) Documents submitted by James Conner, who worked for the First Federal Bank of Huntington, list the Debtor's accounts receivable as of December 31, 2002, and also do not show the Gasson receivable as outstanding. (Connor Aff. Ex. B, ECF No. 80-3.) The Plaintiff further states that the bid submitted by GT Acquisition in April 2003, which does not list the Gasson receivable in its schedule of accounts receivable as of March 31, 2003, refutes Defendant Christopher Gildea's assertion that the auction sale included the Gasson receivable. (Nicholson Aff. Ex. 7, at Schedule 6.14, ECF No. 70-44.)

Finally, the Plaintiff argues that the absence of any claim by Defendant Christopher Gildea for his unpaid wages supports the Plaintiff's assertion that Defendant Christopher Gildea's wages were set off against the Gasson receivable.

**2.** *Defendants' Motion to Strike*

Defendants Gasson, LLC and Christopher Gildea have moved to strike portions of the Statement of Genuine Issues and the Argument sections of the Plaintiff's Memorandum of Law in Opposition to summary judgment on Count I. The Court previously considered the Plaintiff's evidence on this issue because discovery was ongoing, but noted that the Plaintiff's arguments for admissibility were incomplete. The Court added that "[a]fter the Plaintiff has completed his discovery, if it appears that the challenged documents are not admissible, Gildea may move to strike the documents and ask for reconsideration of the Court's resolution of his motion." *Boyer*, 2006 WL 2868924, at *5. The Defendants now argue that more than three years later the Plaintiff's evidence is the same, and it remains inadmissible. The Court agrees that the Plaintiff has not substantially supplemented his evidence on this point since 2006. Nevertheless, the Court finds enough admissible evidence to overcome summary judgment. The Court will here analyze the Defendants' arguments for striking only insofar as they are necessary to decide the motion for summary judgment.[1]

a.      *Mike Motter's July 24, 2002, email and its attachment*

The Defendants argue the contents of Mike Motter's email to Mark Werling and its attachment are inadmissible hearsay. They point out that Motter is not a party to Count I and thus any statements he may have made are not statements of a party opponent as to the parties to Count I. *See Corner Pocket of Sioux Falls, Inc. v. Video Lottery Techs., Inc.*, 979 F. Supp. 1269, 1283 (D.S.D. 1996) (admission by a party opponent is "not evidence against any other party in the case"); Fed. R. Evid. 801(d)(2). The Plaintiff argues the attachment to the email was authored by Defendant Christopher Gildea and is therefore a statement of a party opponent and non-hearsay under Federal Rule of Evidence 801(d)(2).

---

[1] For those portions of the Motion to Strike that address evidence not material to the outcome of the Motion for Summary Judgment, the Court will deny the Motion to Strike as moot.

The Court agrees with the Plaintiff that the email attachment is likely admissible as a statement of a party opponent, and the Motion to Strike will be denied with respect to the email attachment. The Court relies on the text of the email itself, which lays the foundation by Motter's assertion that the attachment consists of "the documents Chris revised." (Werling Aff. Ex. A, at 1.) If Defendant Christopher Gildea, as an officer of the Debtor, revised the documents submitted to Werling through Motter, then the documents are either Defendant Christopher Gildea's own statements and admissible under Rule 801(d)(2)(A), or statements to the truth of which Defendant Christopher Gildea has manifested an adoption or belief and admissible under Rule 801(d)(2)(B). In either case, the Motion to Strike is denied with respect to this evidence.

b.      *GT Aquisition's bid Schedule 6.14*

The Defendants argue Schedule 6.14 lacks foundation for the proposition for which it is offered—that it is a statement or report created by the Debtor's officers not listing the Gasson receivable. The Defendants therefore argue it is inadmissible hearsay. The Plaintiff argues that because the Defendants attached Schedule 6.14 to their summary judgment motion (Asset Purchase Agreement, ECF No. 204-4), it is properly before the Court without limitation. *See United States v. Capital Sav. Ass'n*, 576 F. Supp. 790, 797 (N.D. Ind. 1983) ("Where a party seeks to limit the purpose for which evidence is admitted at trial, it is incumbent upon the party to make an explicit request for such a limitation."); Fed. R. Evid. 105. Further, the Plaintiff argues that because Schedule 6.14 is appended to the Asset Purchase Agreement that was signed by the Steven Gildea—President of the Debtor—it supports the Plaintiff's argument that it is a statement by one of the Debtor's officers and it does not list the Gasson receivable as of March 31, 2003. The Court agrees with the Plaintiff that Schedule 6.14 is properly before the Court because the Defendants submitted it as part of their summary judgment motion. Because it appears to be exactly what both the Defendants and the Plaintiff have averred it is, the Motion to

13

Strike will be denied with respect to Schedule 6.14.[2]

c.      *Property Schedule B*

The Defendants argue that property Schedule B, filed with the bankruptcy court on December 5, 2001, does not support the proposition for which it is offered—specifically, that statements and reports created by the Debtor's officers do not list the Gasson receivable, and that the Gasson receivable would be set off. The Defendants further argue that Schedule B is not authenticated and is hearsay. The Plaintiff responds to the questions of whether Schedule B supports the proposition for which it is offered, arguing that the "Adjust expected" language of Schedule B indicates the Debtor expected to write off the Gasson receivable in its entirety. But the Plaintiff does not respond to the Defendants' hearsay arguments.[3] The Court agrees with the Defendants that the contents of Schedule B are hearsay and the Plaintiff has not shown why an exception would apply. Accordingly, the Motion to Strike will be granted with respect to Schedule B. If the Plaintiff can lay a proper foundation for Schedule B at trial, the Court will reconsider the Motion to Strike.

d.      *Documents attached to Rader and Connor affidavits*

The Defendants argue the financial records of the Debtor on file with the First Federal Savings Bank of Huntington offered as exhibits to the Affidavit of James Conner, and the

---

[2] The Defendants' argument that Schedule 6.14 would not contain pre-petition accounts receivable is not supported by the Appendix of Designated Documents listing the Asset Purchase Agreement, is not supported by the Affidavit of Michael Motter, and is not supported by the Asset Purchase Agreement itself. If there are good reasons to believe Schedule 6.14 was not intended to list an account such as the Gasson receivable, the Defendant has not pointed the Court to those reasons.

[3] Indeed, based on the Plaintiff's statement that the Defendants are moving to strike Schedule B "[n]ot for its inadmissibility" (Pl's Mem. of Law in Opp'n 10, ECF No. 237), it appears the Plaintiff failed to notice that the Defendants argued Schedule B was inadmissible as hearsay.

financial records of the Debtor on file with the Community Development Corporation of Northeast Indiana offered as exhibits to the Affidavit of Rozlyn Rader, are unauthenticated, inadmissible hearsay. The Plaintiff argues these records were held out by "insiders of the Debtor" as authentic, and argues that "Gildea presented the documents to the banks," thus making them statements of a party opponent and admissible. (Pl.'s Mem. of Law Opp'n Defs.' Mot. to Strike 8–9, ECF No. 237.) The Court agrees with the Defendants that the Plaintiff has not laid a proper foundation or shown that these documents were submitted by Defendant Christopher Gildea. Neither Rader nor Conner's affidavit explains how the documents came to be in the possession of the entities, nor were either Rader or Conner employees of the Debtor, so neither can speak to the contents of the documents. The Plaintiff cites to Defendant Christopher Gildea's deposition where he admits that he and others "may have" submitted an application for funding to the Community Development Corporation. (Christopher Gildea Dep. 22, ECF No. 211-17.) The deposition transcript says nothing about documents submitted to the First Federal Savings Bank of Huntington. The Plaintiff's attempts to introduce documentary evidence without laying a proper foundation are unavailing, and the Motion to Strike will be granted with respect to the documents attached to the affidavits of Rozyln Rader and James Conner. Again, if the Plaintiff can lay a proper foundation supporting the admissibility of these documents at trial, the Court will reconsider the Motion to Strike.


3.    *Analysis*

Title 11 U.S.C. § 549 allows a bankruptcy trustee to avoid a transfer of property of the bankruptcy estate if the following elements are met: 1) there is a transfer of property; 2) the property transferred is that of the bankruptcy estate; 3) the transfer was made after the commencement of the case; and 4) the transfer was not authorized by the Bankruptcy Code or by the bankruptcy court. *In re Blair*, 330 B.R. 206, 213 (Bankr. N.D. Ill. 2005). Transfer is defined

as "each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or an interest in property." 11 U.S.C. § 101(54). "Any entity asserting the validity of a transfer under § 549 of the Code shall have the burden of proof." Fed. R. Bankr. P. 6001.

At issue is whether the Debtor actually transferred property to Defendant Christopher Gildea. The burden is on Defendant Christopher Gildea, not the Plaintiff, to prove the validity or absence of the transfer. And the Defendants' evidence notwithstanding, there is still a material issue of fact as to whether such a transfer took place.

The Court finds, first, that there is admissible evidence upon which a reasonable jury could find that the Debtor transferred the Gasson receivable to Defendant Christopher Gildea. As the Court held previously, although the Defendants have some documents stating the Gasson receivable remained outstanding, other documents do not include the Gasson receivable. The Amended Plan Offer attachment shows that the Debtor intended to write off the Gasson receivable. The Amended Plan Offer attachment states it would be offset against Defendant Christopher Gildea's allegedly outstanding wages. The Gasson receivable was not included in the bid to acquire the Debtor's assets. Additionally, it is undisputed that Defendant Christopher Gildea never sought his back wages that were owed, suggesting the setoff had taken place. (Answer ¶ 31, ECF No. 186.) Just as before, Defendants Gasson, LLC and Christopher Gildea have not carried their burden to submit evidence sufficient so that a reasonable jury could only find that no transfer occurred. Therefore, a material issue of fact exists on the question for a jury to answer.

The Court notes that the evidence submitted by the Defendants is all tied to the records of the Debtor. The Defendants show the Court that many documents still list the Gasson receivable. Mark Werling and John Burns state in depositions that there was discussion about carving out the Gasson receivable around the time of the auction sale, though they cannot remember the

16

details, nor whether such a carving out ever happened. Thomas Norris states that there was never a setoff of the Gasson receivable "[a]ccording to the financial books and records of the Debtor." (Norris Aff.  Norris ¶ 8.) Defendant Michael Motter states that the absence of a setoff is "clearly demonstrate[d]" by "reports provided by Brady Ware." (Motter Aff.¶ 12.) Defendant Christopher Gildea states that the receivable remained due and owing during the pendency of the bankruptcy case "according to the financial books and records of the Debtor." (Christopher Gildea Aff.¶ 5.) The Defendants have provided many records of the Debtor and significant testimony to the records of the Debtor.

However, the Defendants' evidence is not sufficient to defeat summary judgment on this issue. The Plaintiff's Second Amended Complaint itself acknowledges that many documents still listed the Gasson receivable. (Second Am. Compl. ¶ 32, ECF No. 183 ("GT Automation's monthly operating reports continued to identify an alleged receivable from Gasson for the duration of the Chapter 11 case.").) Indeed, as this is a case alleging activity proscribed by the Bankruptcy Code, it would not be surprising to find that the records do not tell the whole story. More telling is what the Defendants' evidence does not show. Neither Thomas Norris, nor Defendant Michael Motter, nor Defendant Christopher Gildea give evidence as to the fate of the Gasson receivable. They do not state that it was later paid, or explain why Defendant Christopher Gildea never made a claim for back wages owed to him by the Debtor. As the Court previously stated, the Bankruptcy Code puts the burden on the party asserting the validity of the transfer. Here the Defendants have not met that burden. In spite of the many records that indicate the Debtor's continued ownership of the Gasson receivable at the time of the asset sale, the Plaintiff has presented enough evidence of a setoff that a reasonable jury could find such a setoff occurred. Accordingly, Defendants Gasson, LLC and Christopher Gildea's Motion for Summary Judgment on Count I will be denied.

**B.      Count II of the Second Amended Complaint**

Pursuant to 11 U.S.C. § 549, Count II of the Plaintiff's Second Amended Complaint seeks to avoid more than $30,000 of the Debtor's post-petition payments to Defendant Christopher Gildea, which Defendant Christopher Gildea argues were made to reimburse him for ordinary business expenses of the Debtor. At issue is whether the payments were in fact ordinary business expenses.

**1.      *Facts Relevant to Count II***

Defendant Christopher Gildea states that he used his credit card to charge and pay for necessary expenses of the Debtor during the normal course of the Debtor's business, and that these expenses were routinely reimbursed by the Debtor. Defendant Christopher Gildea claims these reimbursements were fully disclosed in the Debtor's operating reports or bank statements, and were of the same type of expense the Debtor routinely reimbursed for other employees both before and after the filing of the petition. The Plaintiff argues that more than $30,000 of the payments Defendant Christopher Gildea received from the Debtor after the filing of the bankruptcy petition and before the auction sale were unauthorized transfers under § 549 because they were not in the ordinary course of the Debtor's business. Of these approximately $30,000 of payments, the Plaintiff specifically alleges that more than $15,400 were not proper business expenses and were thus unauthorized under § 549 because they were not in the ordinary course of business.

This Court previously considered and denied summary judgment as to this issue because there was a triable issue of fact concerning whether the payments to Defendant Christopher Gildea were in the ordinary course of business. The Court stated as follows:

> The Court has been given no information on the record-keeping practices of the Debtor or any explanation as to why Norris's records would not match the pre-bankruptcy ledger. Without any guidance as to how to interpret the parties'

18

submissions, and in light of the discrepancies between Norris's records and the ledger entries, the Court cannot accept Norris's records as established facts. The Defendant has the burden of proof on whether the reimbursements were made in the ordinary course of business, and its evidence is called into doubt by the pre-bankruptcy ledger. Based on the evidence before the Court, a reasonable jury could find that Norris's records are not accurate, and that there were no similar pre-bankruptcy reimbursements to Chris Gildea, leading to the conclusion that Chris Gildea's post-bankruptcy reimbursements were not in the ordinary course of business.

*Boyer v. Gildea*, 374 B.R. 645, 652 (N.D. Ind. 2007).

Defendant Christopher Gildea again challenges the Plaintiff's claim that the payments he received were not in the ordinary course of business. In support, Defendant Christopher Gildea submits, *inter alia*, the Plaintiff's responses to Defendant Christopher Gildea's interrogatories and certified questions, wherein the Plaintiff listed $15,477.68—not $30,000—of reimbursements to Defendant Christopher Gildea that the Plaintiff claimed were unauthorized and improper. (App. Designated Docs. Ex. B, ECF No. 207-2; App. Designated Docs. Ex. C, ECF No. 207-3.) Next, Defendant Christopher Gildea submits the affidavit of Thomas Norris, who states that financial records, including records of reimbursements to employees for ordinary business expenses of the Debtor, were provided to the Plaintiff and counsel for Comerica during the bankruptcy. Specifically, attached to Norris's affidavit are records showing reimbursements made by the Debtor to employees from May 1998 to October 2001, the three and a half years before the Debtor filed for bankruptcy, and from October 2001 to April 2003, the year and a half following the bankruptcy filing. (Norris Aff. Ex. A, ECF No. 207-4.) During the first period, Defendant Christopher Gildea received $37,265.04 in reimbursements, and in the second period, he received $34,057.84 in reimbursements. The total amount of reimbursements paid by the Debtor in the first period was $145,477.25, and the total in the second period was $69,279.55. Norris states that the expenditures listed in the documents were for "expenses of the Debtor that were ordinary in nature and type." (*Id.*. ¶ 6.) Also attached to Norris's affidavit is a spreadsheet

wherein Defendant Christopher Gildea specifically responds to each line item of the $15,400 in reimbursements which the Plaintiff challenged in its response to interrogatories. (*Id*. Ex. B.) Norris states that the expenses reimbursed in Exhibit B were "ordinary in nature and type" and "properly reimbursable to the employee." (*Id*.  ¶ 9.)

Defendant Christopher Gildea additionally submits the affidavit of Betty McPheeters, who was the office manager and bookkeeper for the Debtor. McPheeters states that it was the normal business practice of the Debtor—both before and during the bankruptcy—to reimburse employees for business expenses. She submits the Plaintiff's list of the $15,477.68 in challenged reimbursements and states that she personally reviewed each of these expenses and determined they were in the ordinary course of business of the Debtor and properly reimbursable to Defendant Christopher Gildea. (McPheeters Aff.¶ 5, ECF No. 207-3.) She also submits a listing of reimbursements to employees of the Debtor both before and during the bankruptcy to show that the expenses reimbursed to Defendant Christopher Gildea were of the same type and nature as expenses reimbursed to other employees. (*Id.* ¶ 6.) McPheeter's reimbursement listing is not the same as the reimbursement list submitted by Norris. The list submitted by McPheeter indicates that Defendant Christopher Gildea received $28,273.49 in reimbursements from January 1998 to October 2001, and that he received $27,524.76 in reimbursements from October 2001 to April 2003. Additionally, McPheeter's listing indicates that the total amount of reimbursements paid by the Debtor during the first period was $113,542.23, while the total paid in the second period was $96,328.44. (*Id.* Ex. B.)

Finally, Defendant Christopher Gildea submits his own affidavit, where he states that during the bankruptcy he charged expenses to his personal credit card, and that these expenses were the same in nature and substance as those reimbursed to other employees. (Christopher Gildea Aff.¶¶ 5 & 9, ECF No. 207-3.)

The Plaintiff submits deposition testimony from Defendant Christopher Gildea, where he

states that he had a "business-related" credit card before the filing of the bankruptcy petition which he used more often than his personal card for business expenses to be reimbursed. (Gildea Dep., Pl.'s App. of Designated Docs. Ex. A, at 158–59, ECF No. 220-2.) The Plaintiff also submits deposition testimony from Defendant Michael Motter, where he states that Defendant Christopher Gildea told him that "[Defendant Christopher Gildea's] personal credit card was being used for business-related purchases because the company couldn't get credit from vendors." (Motter Dep., Pl.'s App of Designated Docs Ex. B, at 184, ECF No. 220-3.) Defendant Motter also states in his deposition that Defendant Christopher Gildea's personal credit card was not the only personal credit card being used in this way. (*Id.*) Next, the Plaintiff submits a declaration from Mark Werling, introducing deposition testimony from Steven Gildea and Joseph Siela. (Werling Decl.  ECF No. 221.)

The Plaintiff appears to continue to rely on documents submitted in opposition to the former summary judgment motion on this issue, including an affidavit of Mark Werling (who represented Comerica in the bankruptcy) stating that Werling received post-bankruptcy disbursement ledgers from the Debtor showing reimbursements of over $30,000 for expenses paid by Gildea. (Werling Aff.¶ 77, ECF No. 82.) Werling's affidavit states that he was told by Defendant Motter in an e-mail that Defendant Christopher Gildea's credit card was used when the Debtor did not have otherwise available funds. (*Id.*) The Plaintiff relies on the Debtor's ledger for the pre-bankruptcy period as evidence that such payments to Defendant Christopher Gildea were not made prior to bankruptcy, suggesting the post-bankruptcy payments were not part of the ordinary course of the Debtor's business. (Boyer Decl. Ex. U, ECF Nos. 83-2–83-16.) Finally, the Plaintiff submits the statement of insider compensation to show that the payments to Defendant Christopher Gildea were not listed there. (Boyer Decl. Ex. E, ECF No. 77-9; Boyer Decl. Ex. F, ECF No. 77-10.)

**2.** **Defendant Christopher Gildea's Motion to Strike**

Defendant Christopher Gildea has moved to strike portions of the Statement of Genuine Issues and the Argument sections of the Plaintiff's Memorandum of Law in Opposition to summary judgment on Count II. As with the Plaintiff's evidence relating to Count I, the Court previously considered the Plaintiff's evidence on this issue because discovery was ongoing, but noted that some of the Plaintiff's arguments for admissibility were incomplete. Defendant Christopher Gildea again argues that the Plaintiff's evidence is inadmissible on a variety of grounds. The Court finds enough admissible evidence to defeat summary judgment. As above, the Court will here analyze the Defendants' arguments for striking only insofar as they are necessary to decide the motion for summary judgment.[4]

a.     *"He began using his personal credit card to give the [D]ebtor an additional line of credit."*

Defendant Christopher Gildea moves to strike the above language from the Plaintiff's brief because Defendant Motter's statement referred to in Werling's affidavit is hearsay, and because Defendant Motter's deposition statement does not indicate that Defendant Christopher Gildea told him these exact words. The Plaintiff argues Defendant Christopher Gildea's use of his personal credit card for post-petition purchases is undisputed because it is admitted in Defendant Christopher Gildea's affidavit. Further, because Defendant Motter testified in his deposition that Defendant Christopher Gildea told him the Debtor was using his personal credit card when it was unable to get credit from other vendors, this statement is supported by non-hearsay evidence. First, the Court agrees with Defendant Christopher Gildea that Werling's testimony to the words of Defendant Motter is hearsay as to this count, and the Motion to Strike

---

[4]Also as before, for those portions of the Motion to Strike that address evidence not material to the outcome of the Motion for Summary Judgment, the Court will deny the Motion to Strike as moot.

will be granted for the words Defendant Motter told Werling. However, the Court agrees with the Plaintiff that the challenged statement is supported by a statement of a party opponent—Defendant Christopher Gildea's own statement as testified to by Defendant Motter at his deposition—and the Motion to Strike will be denied with respect to the challenged statement.

b.   *"There were no advances made for emergency purposes pre-petition."*

Defendant Christopher Gildea moves to strike the above language from the Plaintiff's brief because it is irrelevant as all references to the Debtor's pre-petition practice are to reimbursements, not advances. Notably, Defendant Christopher Gildea does not move to strike this reference to the pre-petition ledger on a hearsay basis. The Plaintiff argues the challenged statement is relevant because the Plaintiff's evidence (particularly the deposition testimony of Defendant Motter) indicates that post-petition, Defendant Christopher Gildea was using his personally secured line of credit for business expenses when the Debtor could not secure credit, whereas pre-petition that was not the Debtor's practice. On this basis, the Court agrees with the Plaintiff that the challenged statement is relevant, and the Motion to Strike will be denied as to this statement.

c.   *"The Trustee also received a communication from Michael Motter, the Debtor's court-appointed accountant, in which he states that the Debtor was using Gildea's credit card as a financing mechanism for emergency purchases."*

Consistent with the holding above, the Court will grant the Motion to Strike as to Defendant Motter's hearsay statements. However, the Court finds that the substance of the challenged statement—that the Debtor was using Defendant Christopher Gildea's credit card to finance emergency purchases post-petition—is supported by Defendant Motter's deposition testimony, and the Motion to Strike will be denied as to "the Debtor was using Gildea's credit

23

card as a financing mechanism for emergency purchases."

**3.**     *Analysis*

As stated above, Title 11 U.S.C. § 549 allows a bankruptcy trustee to avoid a transfer of property of the bankruptcy estate if the following elements are met: 1) there is a transfer of property; 2) the property transferred is that of the bankruptcy estate; 3) the transfer was made after the commencement of the case; and 4) the transfer was not authorized by the Bankruptcy Code or by the bankruptcy court. *In re Blair*, 330 B.R. at 213. "Any entity asserting the validity of a transfer under § 549 of the Code shall have the burden of proof." Fed. R. Bankr. P. 6001. If a business is allowed to continue operating after filing for bankruptcy, it may continue to obtain unsecured debt and enter into transactions if the business does so in the course of ordinary operations. 11 U.S.C. §§ 363(c)(1); 364(a).

The Plaintiff claims the Debtor reimbursed payments made by Defendant Christopher Gildea for the Debtor without authorization and not in the ordinary course of business, and therefore, the transactions ought to be avoided. Additionally, the Plaintiff claims that some of the unauthorized payments were for improper expenses. Defendant Christopher Gildea argues the payments he received were for purchases made in the ordinary course of business.

The bankruptcy code does not define "ordinary course of business," but courts have fashioned a test to determine whether a transaction was in the ordinary course of business. A transaction is in the ordinary course of business only if it is "most likely" the case that 1) the transaction does not expose "a hypothetical creditor to economic risks different from those accepted when such creditor initially extended credit to the debtor," and 2) the transaction at issue is comparable to the types of transactions entered into by similar businesses (the horizontal

24

test).[5] *In re Garofalo's Finer Foods, Inc.*, 186 B.R. 414, 424 (N.D. Ill. 1995) (quoting *In re Garofalo's Finer Foods, Inc.*, 164 B.R. 955, 962–63 (Bankr. N.D. Ill. 1994)). A creditor's reasonable expectations are "based in large part upon the debtor's specific pre-petition business practices and norms and the expectation that the debtor will conform to those practices and norms while operating as a debtor-in-possession," and therefore, a "fundamental characteristic of an 'ordinary' post-petition business transaction is its similarity to a pre-petition business practice" (the vertical test). *Id.* at 425.

Defendant Christopher Gildea argues, first, that the Plaintiff's allegations are inconsistent in that the claim is to avoid more than $30,000 in post-petition transfers, but the interrogatory responses indicate only $15,477.68 of specific reimbursements that were improper. The Court finds that Defendant Christopher Gildea misunderstands the Plaintiff's arguments. The Plaintiff is arguing that around $30,000 in payments to Defendant Christopher Gildea should be avoided because they did not conform to the Debtor's pre-petition business practices in that they were payments to Defendant Christopher Gildea for purchases made on his own line of credit. Moreover, the Plaintiff responded to Defendant Christopher Gildea's interrogatories by specifically listing more than $15,400 of those payments as also being improper business expenses. Whether because 1) the expenses were paid in a manner that did not conform to the pre-petition business practices of the Debtor, or because 2) they were not proper business expenses, the Plaintiff argues all $30,000 of the post-petition transfers to Defendant Christopher Gildea should be avoided under § 549 because they are not transactions in the ordinary course of business.

Defendant Christopher Gildea argues that his own affidavit, his line-by-line refutation of the specific transactions that the Plaintiff challenges, the affidavits of Norris and McPheeter, and

---

[5]As previously, no evidence was presented to the Court on transactions entered into by other similar businesses, and thus the Court will not decide the issue on the basis of the horizontal test.

the documentary evidence concerning reimbursement history of the Debtor all show that there is no triable issue of material fact as to whether the post-petition payments were in the ordinary course of business. The Court disagrees for two reasons.

First, Defendant Christopher Gildea makes no effort to clear up the discrepancy between the Debtor's pre-petition ledger and the extensive reimbursement listings introduced by Norris. It was on this issue that the Court previously denied summary judgment—because Defendant Christopher Gildea did not explain why Norris's spreadsheet of reimbursements did not match the pre-petition ledger of the Debtor, raising questions as to whether Norris's spreadsheet was accurate. In fact, Defendant Christopher Gildea further muddies the waters by submitting Norris's spreadsheet of reimbursements along with McPheeter's spreadsheet of reimbursements, which also does not match the pre-petition ledger, and does not match Norris's spreadsheet. Norris's reimbursement listing indicates that Defendant Christopher Gildea received $37,265.04 in reimbursements during the three years prior to bankruptcy, and $34,057.84 in reimbursements during the year and a half following bankruptcy. The total amount of reimbursements paid by the Debtor in the first period was $145,477.25, and the total in the second period was $69,279.55. (Norris Aff. Ex. A.) However, McPheeter's spreadsheet of reimbursements indicates that Defendant Christopher Gildea received $28,273.49 in reimbursements during roughly the same first period and $27,524.76 in reimbursements during the second period. The total amount of reimbursements paid by the Debtor indicated in McPheeter's listing during the first period was $113,542.23, and $96,328.44 in the second period. (McPheeter Aff. Ex. B.) Defendant Christopher Gildea does not mention or explain the discrepancies between these two reimbursement lists.

The Plaintiff again relies on the Debtor's pre-bankruptcy-petition ledger as evidence that Defendant Christopher Gildea's reimbursements were not made in the ordinary course of business. The Plaintiff points to the continuing discrepancies between the pre-bankruptcy ledger

26

and Norris's records. As before, several entries in the pre-bankruptcy ledger could be reimbursement payments to Defendant Christopher Gildea. For example, one entry shows a debit of $657.50 to Defendant Christopher Gildea on January 17, 2001 (Pl. Ex. U (5 of 15) at 11, ECF No. 83-6), and another shows a debit of $258.00 to Defendant Christopher Gildea on January 17, 2001. (Pl. Ex. U (15 of 15) at 17, DE 83-16.) However, the Court cannot match any of the pre-bankruptcy ledger entries of payments to Defendant Christopher Gildea with the records of pre-bankruptcy reimbursements submitted by Norris.[6] The $657.50 debit and the $258.00 debits to Defendant Christopher Gildea do appear in McPheeter's reimbursement listing, but her list shows an additional debit that day to Defendant Christopher Gildea for $160.48. Norris's record indicates Defendant Christopher Gildea was reimbursed for $1,733.48 that day. The Court has been given no information on the record-keeping practices of the Debtor or any explanation as to why Norris's records or McPheeter's records would not match the pre-bankruptcy ledger. Without any guidance as to how to interpret the parties' submissions, and in light of the discrepancies between the records and the ledger entries, the Court cannot accept Norris's or McPheeter's records as established facts. The Defendant has the burden of proof on whether the reimbursements were made in the ordinary course of business, and its evidence is again called into doubt by the pre-bankruptcy ledger and the conflicting records. Based on the evidence before the Court, a reasonable jury could find that Norris's records are not accurate, or that McPheeter's records are not accurate, and that there were no similar pre-bankruptcy reimbursements to Defendant Christopher Gildea, leading to the conclusion that Defendant Christopher Gildea's post-bankruptcy reimbursements were not in the ordinary course of business. This was the rationale for the Court's previous denial of summary judgment, and it

---

[6] As noted previously, the Court was able to match some of the ledger entries of Debtor payments to Norris's records. For example, both the pre-bankruptcy ledger and Norris's records list as expenses $781.79 to Anita Gildea on January 8, 2001, $76.86 to Greg Bulmahn on August 17, 2001, and $52.00 to Milt Brown on April 10, 2001.

remains a proper basis for denial of Defendant Christopher Gildea's motion.

Second, the Plaintiff has introduced new evidence that the payments to Defendant Christopher Gildea did not match the Debtor's pre-petition business practice, and thus were not in the ordinary course of business. Defendant Christopher Gildea himself in his deposition admitted that pre-petition he would have used his business credit card for reimbursements, while in his affidavit he stated that post-petition he was using his personal credit card. Additionally, Defendant Motter's deposition testimony was that Defendant Christopher Gildea told him the Debtor was using his personal credit card because it was unable to get funding from other sources. No evidence has been introduced showing that the pre-petition practice of the Debtor was to use personal credit cards of its employees for financing when it was unable to obtain financing elsewhere. Therefore, such emergency use of Defendant Christopher Gildea's credit card post-petition, to meet expenses the Debtor could not cover through other forms of credit, would fail the vertical test, and would not be part of the Debtor's ordinary course of business. *See In re Ockerlund Constr. Co.*, 308 B.R. 325, 328–29 (Bankr. N.D. Ill. 2004) (stating that the need for "emergency" funds suggests a situation outside the ordinary course of business; holding that, because there was no evidence of such financing in the past, executive's extension of emergency credit to debtor-in-possession was not in the ordinary course of business); *In re Lodge America, Inc.*, 259 B.R. 728, 733 (D. Kan. 2001) (absent evidence that debtor had ever used short term financing to pay bills in the past, such financing failed the vertical test and was not in the ordinary course of business). Moreover, even accepting Norris's and McPheeter's reimbursement lists as accurate, both show Defendant Christopher Gildea receiving very few payments in the nine months leading up to bankruptcy, and then receiving a much larger amount of payments once the petition was filed. This supports the Plaintiff's argument that the Debtor was using Defendant Christopher Gildea's personal credit card as an alternative form of credit, and no evidence suggests the Debtor engaged in such a practice before bankruptcy. In sum, the

Plaintiff has introduced enough evidence to suggest that the way payments were being made to Defendant Christopher Gildea post-petition was not in the ordinary course of the Debtor's business.

For these reasons, the Court finds that there is a material issue of fact as to whether the post-bankruptcy reimbursements to Defendant Christopher Gildea were made in the ordinary course of business, and the question is for a jury to determine at trial.

**C.    Plaintiff's Request for Attorney's Fees**

The Plaintiff urges the Court to award him his fees incurred in opposing these motions under 28 U.S.C. § 1927, which allows a court to award attorney's fees where an attorney "multiplies the proceedings in any case unreasonably and vexatiously." The Seventh Circuit has stated that a court may award attorney's fees under § 1927 where an attorney has acted in an "objectively unreasonable manner." *Jolly Grp., Ltd. v. Medline Indus., Inc.*, 435 F.3d 717, 720 (7th Cir. 2006) (quoting *Pacific Dunlop Holdings, Inc. v. Barosh*, 22 F.3d 113, 119 (7th Cir. 1994)). "The purpose of § 1927 is to deter frivolous litigation and abusive practices by attorneys and to ensure that those who create unnecessary costs also bear them." *Riddle & Assocs., P.C. v. Kelly*, 414 F.3d 832, 835 (7th Cir. 2005) (quotation marks and citation omitted).

The Court finds that sanctions under § 1927 are inappropriate. When Defendants Gasson, LLC and Christopher Gildea filed their initial motions, discovery had not been completed, and the evidence upon which they rely in their second set of motions is not the same as that upon which they initially relied. Further, the Court specifically noted that the Defendants would have the opportunity to refile. As the Court stated in its October 5, 2006, Opinion, "[a]fter the Plaintiff has completed his discovery, if it appears that the challenged documents are not admissible, Gildea may move to strike the documents and ask for reconsideration of the Court's resolution of his motion." *Boyer*, 2006 WL 2868924, at *5. Under the circumstances before the Court, § 1927

29

sanctions are inappropriate, and the Plaintiff's requests for attorney's fees will be denied.

## ORDER

For the reasons stated, Defendants Gasson, LLC and Christopher Gildea's Motion for Summary Judgment on Count I [ECF No. 202] is DENIED, and their Motion to Strike relating to Count I [ECF No. 228] is GRANTED IN PART, DENIED IN PART and DENIED IN PART AS MOOT. Defendant Christopher Gildea's Motion for Partial Summary Judgment as it Relates to Count II [ECF No. 205] is DENIED, and his Motion to Strike relating to Count II [ECF No. 231] is GRANTED IN PART, DENIED IN PART, and DENIED IN PART AS MOOT.

SO ORDERED on February 21, 2012.

   /s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT